## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| **DONNA IHEANACHO,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  6:17-cv-0910-MHH** |
| | } | |
| **NANCY BERRYHILL,** | } | |
| **Acting Commissioner of the** | } | |
| **Social Security Administration,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), plaintiff Donna Iheanacho seeks judicial review of a final adverse decision of the Commissioner of Social Security.  The Commissioner denied Ms. Iheanacho's claims for disability insurance benefits and supplemental security income.  After careful review, the Court remands the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Ms. Iheanacho applied for a period of disability and disability insurance benefits and supplemental security income on May 14, 2015.  (Doc. 7-6, pp. 2, 9).  Ms. Iheanacho alleges that her disability began March 10, 2015.  (Doc. 7-6, p. 9).  The Commissioner initially denied Ms. Iheanacho's claims on July 24, 2015.

(Doc. 7-5, p. 4). Ms. Iheanacho requested a hearing before an Administrative Law Judge (ALJ) on August 20, 2015. (Doc. 7-5, p. 9). The hearing took place on March 7, 2016. (Doc. 7-3, p. 32). The ALJ issued an unfavorable decision on May 26, 2016. (Doc. 7-3, p. 9). On April 26, 2017, the Appeals Council declined Ms. Iheanacho's request for review (Doc. 7-3, p. 2), making the Commissioner's decision final for this Court's appellate review. *See* 42 U.S.C. §§ 405(g) and 1383(c).

## II.    STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's factual findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In evaluating the administrative record, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178

(11th Cir. 2011) (internal quotations and citation omitted).  If substantial evidence supports the ALJ's factual findings, then the Court "must affirm even if the evidence preponderates against the Commissioner's findings."  *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards.  If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III.   SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that she is disabled, an ALJ follows a five-step sequential evaluation process.  The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Ms. Iheanacho has not engaged in substantial gainful activity since March 10, 2015, the alleged onset date. (Doc. 7-3, p. 14). The ALJ determined that Ms. Iheanacho suffers from two severe impairments: degenerative disc disease of the lumbar spine post laminectomy x2 and obesity. (Doc. 7-3, p. 14). The ALJ also determined Ms. Iheanacho has the following non-severe impairments: hypertension, diabetes mellitus, and hyperlipidemia. (Doc. 7-3, p. 15). Based on a review of the medical evidence, the ALJ concluded that Ms. Iheanacho does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 7-3, p. 15).

In light of Ms. Iheanacho's impairments, the ALJ evaluated Ms. Iheanacho's residual functional capacity. The ALJ determined that Ms. Iheanacho has the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently; stand and/or walk, with normal breaks, for a total of 6 hours in an 8-hour workday; sit, with normal breaks, for a total of 6 hours in an 8-hour workday; push and/or pull same as for lift and/or carry; occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds; frequently balance; occasionally stoop, kneel, crouch and crawl; should avoid concentrated exposure to extreme cold, extreme heat, wetness and humidity; and should avoid all exposure to hazards, such as moving unguarded machinery and unprotected heights.

(Doc. 7-3, p. 16).

Based on this RFC, the ALJ concluded that Ms. Iheanacho is able to perform her past relevant work as a cashier. (Doc. 7-3, p. 23). Relying on testimony from a vocational expert, the ALJ found that other jobs exist in the national economy that Ms. Iheanacho can perform, including garment folder, bagger, and marker. (Doc. 7-3, p. 25). Accordingly, the ALJ determined that Ms. Iheanacho has not been under a disability within the meaning of the Social Security Act. (Doc. 7-3, p. 25).

## IV. ANALYSIS

Ms. Iheanacho argues that she is entitled to relief from the ALJ's decision because the ALJ failed to properly evaluate the credibility of Ms. Iheanacho's testimony regarding her pain. (Doc. 9 at 29). This Court agrees because the ALJ's negative credibility finding is not based on substantial evidence. Consequently, the Court finds that this case should be remanded for further development. *See Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652, at *5 (M.D. Fla. Feb. 25, 2011) ("[I]f a credibility determination is inadequate, a remand to the agency for further consideration is the proper remedy.").[1]

The Eleventh Circuit pain standard "applies when a disability claimant attempts to establish disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

---

[1] Because the Court finds that a pain standard remand is appropriate, discussion of Ms. Iheanacho's other issues raised on appeal is unnecessary.

"In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted). If the ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir. 2002).

Once the issue becomes one of credibility, the provisions of SSR 16-3p apply, which state:

> [W]e recognize that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence. In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

SSR 16-3p, 2016 WL 1119029, at *4.   Additionally, "[w]hen evaluating a

claimant's subjective symptoms, the ALJ must consider the following factors:

> (i) the claimant's 'daily activities; (ii) the location, duration,
> frequency, and intensity of the [claimant's] pain or other symptoms;
> (iii) [p]recipitating and aggravating factors; (iv) the type, dosage,
> effectiveness, and side effects of any medication the [claimant took]
> to alleviate pain or other symptoms; (v) treatment, other than
> medication, [the claimant] received for relief . . . of pain or other
> symptoms; and (vi) any measures the claimant personally used to
> relieve pain or other symptoms.'"

*Leiter v. Comm'r of SSA*, 377 Fed. Appx. 944, 947 (11th Cir. May 6, 2010)

(quoting 20 C.F.R. § 404.1529(c)(3)).

Ms. Iheanacho testified that she experiences debilitating pain and loss of

feeling in her lower back and legs.  (Doc. 7-3, pp. 45, 47).  She stated that she

cannot sit more than 20 minutes or stand or walk longer than 10 minutes, and she

must lie down approximately four hours each day.  (Doc. 7-3, pp. 48, 50).  She

testified that nerve pain prevents her from wearing shoes for long periods of time

and causes numbness in her feet.  (Doc. 7-3, p. 47).  Ms. Iheanacho testified that

her pain interferes with her sleep and makes it difficult for her to prepare food or

perform household chores.  (Doc. 7-3, pp. 50-52).  She uses a cane to walk long

distances.  (Doc. 7-3, pp. 47).[2]  She is unable drive for long periods of time due to

---

[2] The ALJ notes that there is no evidence Ms. Iheanacho's cane was prescribed.  (Doc. 7-3, p. 20).  However, the lack of prescription does not necessarily indicate that a claimant does not require such a device.  *See Davis v. Berryhill*, No. 2:15-CV-1429-KOB, 2017 WL 1074451, at *9 (N.D. Ala. Mar. 20, 2017) ("The ALJ must always consider the particular facts of a case when

nerve pain and numbness in her feet, back, and legs. (Doc. 7-3, pp. 47-48). She testified that her pain interferes with her self-care and that she needs help to put on her socks and underwear. (Doc. 7-3, p. 51). She takes Norco for pain, but her pain level remains an eight out of 10 with medication. (Doc. 7-3, p. 49).

The ALJ concluded that Ms. Iheanacho's impairments meet the first part of the pain standard but not the second part because the ALJ found that Ms. Iheanacho's alleged pain was inconsistent with the objective medical evidence, and her daily activities diminished the credibility of her allegations of pain. (Doc. 7-3, pp. 16, 20). The Court examines each category of evidence in turn.

## A.    Objective Medical Evidence

An ALJ may consider objective medical evidence when evaluating a claimant's subjective pain testimony. 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."). Still, the ALJ cannot discredit a plaintiff's testimony as to the intensity or persistence of her pain and fatigue solely based on the lack of objective medical evidence. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *see also Todd v. Heckler*, 736 F.2d 641, 642 (11th Cir. 1984) (explaining that "pain alone may be disabling" and that it is

determining the need for a hand-held device. Notably absent from this standard is any requirement for a prescription.") (internal quotations and citations omitted).

improper for an ALJ to require objective medical evidence to support a claim of disabling pain).

When discounting Ms. Iheanacho's pain, the ALJ relied upon the following objective medical evidence:

> The claimant's allegations are not consistent with the evidence based upon their inconsistency with the objective medical evidence. Throughout the period, the claimant reported having lower back pain radiating to the lower extremities. Physical examinations show that the claimant had an antalgic gait but functional and tenderness over the left hip and SI area (Ex. 2F). Subsequent progress notes indicate that the claimant ambulated with a cane, but there is no evidence showing that it was prescribed and/or medically necessary (Ex. 2F, 3F, 10F). In September 2015, the claimant sought emergency care for back pain (Ex. 8F). However, physical examination showed that she had lower lumbar tenderness, but otherwise, she had painless range of motion, full range of motion and strength of all extremities with no tenderness or edema, intact sensation and she was in no acute distress (Ex. 8F, pg. 206). The claimant had surgery for a redo decompression of L4-L5 and L5-Sl with a discectomy at L4-L5, but was advised of the high risk given her morbid obesity and her previous surgery at that level (Ex. 8F, pg. 216). The claimant's pain was noted to be much more readily controlled after the surgery and she was switched to oral pain medications (Ex. 8F, pg. 218). A month after the surgery, Dr. Adderholt noted that the claimant had marked improvement in her radicular complaints and overall, she was doing quite well and released her back to full activity with no restrictions and to follow up as needed (Ex. 9F, pg. 2). The record reveals that the claimant's allegedly disabling impairments was present at approximately the same level of severity prior to the alleged onset date. The fact that the impairments did not prevent the claimant from working at that time strongly suggests that it would not currently prevent work.

(Doc. 7-3, p. 20).  The Court recognizes the logic in the ALJ's analysis, but the analysis omits objective medical evidence that supports Ms. Iheanacho's description of her pain.

1. *Ms. Iheanacho's Treatment Records*

For instance, the ALJ noted that Ms. Iheanacho exhibited a gait that was antalgic but functional during her March 24, 2015 appointment with Dr. Howell, her first following the onset of her disability.  (Doc. 7-3, p. 20).  Merriam-Webster's Medical Dictionary defines antalgic as:  "marked by or being an unnatural position or movement assumed by someone to minimize or alleviate pain or discomfort (as in the leg or back)." *Antalgic*, MERRIAM-WEBSTER ONLINE MEDICAL DICTIONARY,  https://www.merriam-webster.com/medical/antalgic (last visited July 9, 2018).  Thus, even though Ms. Iheanacho's gait was functional, her gait indicated pain or discomfort.

Moreover, the ALJ did not mention that treatment notes from this appointment indicate that Ms. Iheanacho exhibited "spring test, modified Patrick's test, [and] pain worse with lumbar extension."  (Doc. 7-9, p. 11).  The ALJ did not discuss notations from that same appointment which reflect Ms. Iheanacho was "having problems sitting, walking etc."  (Doc. 7-9, p. 10).

When discussing Ms. Iheanacho's consultative examination by Dr. Harrison on July 8, 2015, the ALJ accurately related that Ms. Iheanacho had full strength in

her extremities and flexed her hip to greater than 100 degrees. (Doc. 7-3, p. 18; Doc. 7-9, p. 53). However, Dr. Harrison also observed that Ms. Iheanacho "could anteriorly flex only to 30 degrees" during the examination. (Doc. 7-9, p. 53). While an ALJ need not discuss every piece of medical evidence in the record, he may not "pick and choose among a doctor's records to support his own conclusion." *Chambers v. Astrue*, 671 F. Supp. 2d 1253, 1258 (N.D. Ala. 2009).

### 2. *Ms. Iheanacho's Hospital Records*

The ALJ referenced hospital records from September 7, 2015, dictated by Dr. Husainy, which reflect that Ms. Iheanacho was in no acute distress, had full range of motion and strength in her extremities, and painless range of motion in her back. (Doc. 7-3, p. 20; Doc. 7-12, p. 20). However Dr. Husainy also gave Ms. Iheanacho "2 doses of morphine . . . with minimal relief" for her back pain (Doc. 7-12, p. 20) and described Ms. Iheanacho's condition upon discharge from the emergency room as "[i]ntractable back pain." (Doc. 7-12, p. 21).

Other medical records from the same night, dictated by Dr. Kyei-Nimako, state:

> There is limited range of movement of the left lower extremity due to pain. Attempts to passively move the left lower extremity elicits severe low back pain that is unbearable. Sensation is diminished in the right lower extremity, but is hypersensitive in the left lower extremity. Plantar response is equivocal.

(Doc. 7-12, p. 35). These same records contain notations that Ms. Iheanacho was "lying in bed in severe painful distress" and was "tearful." (Doc. 7-12, p. 35). An MRI showed "pretty severe degenerative disc disease of L4-5 with a large central disc herniation at that level with severe stenosis at that level and some mild lateral recess stenosis at L5-S1." (Doc. 7-12, p. 52).

Dr. Adderholt's notes from the following day record that "[Ms. Iheanacho] cannot get up out of bed, she cannot walk and she cannot stand without severe back, hip[,] and leg pain." (Doc. 7-12, p. 52). Dr. Adderholt noted on September 8, 2015, that Ms. Iheanacho exhibited "some numbness in the legs" as well as "decreased sensation in both lower extremities" in addition to a "positive straight leg raise bilaterally." (Doc. 7-12, p. 52). Dr. Adderholt discussed with Ms. Iheanacho that "a redo decompression of L4-5 and L5-S1 with a discectomy at L4-5" was a possible treatment for her back problem. (Doc. 7-12, p. 52). Dr. Adderholt cautioned Ms. Iheanacho about the "high risk given her morbid obesity and her previous surgery at that level." (Doc. 7-12, p. 52). Ms. Iheanacho's willingness to undergo a risky back surgery objectively supports her disabling pain.

Records from the night Ms. Iheanacho was admitted to the hospital corroborate the notations of Dr. Adderholt and Dr. Kyei-Nimako rather than those of Dr. Husainy. Those records indicate that Ms. Iheanacho arrived at the hospital

on a stretcher, reported her pain level as 10, and exhibited "limited" lumbar range of motion.  (Doc. 7-12, pp. 11, 13).  Because the ALJ's discussion of the hospital records do not include those records that support Ms. Iheanacho's claim of disabling pain, the ALJ's credibility determination is not supported by substantial evidence.  *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (ALJ erred in "focusing upon one aspect of the evidence and ignoring other parts of the record . . . It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence.").

### 3.  *Ms. Iheanacho's Pain Level Following Surgery*

The ALJ noted that Ms. Iheanacho's pain was "much more readily controlled"  upon discharge from the hospital on September 12, 2015, after her surgery.  (Doc. 7-3, p. 20; *see also* Doc. 7-12, p. 32).

Ms. Iheanacho reported a seven out of 10 pain level with medication to Dr. Howell on October 12, 2015.   (Doc. 7-12, p. 70).   Ms. Iheanacho described additional symptoms beyond back pain including "sharp and constant pain in her feet with numbness" and "pain . . . all over her feet and into her ankles." (Doc. 7-12, p. 70).

On October 19, 2015, Dr. Adderholt reported that Ms. Iheanacho was "doing exceptionally well" with "marked improvement in her radicular complaints." (Doc. 7-12, p. 47).   Dr. Adderholt told Ms. Iheanacho "to resume her normal

activity and release[d] her back to full activity with no restrictions[.]" (Doc. 7-12, p. 48). Ms. Iheanacho's records from this visit do not discuss her pain, and Dr. Adderholt's clinical impressions appear to focus on the surgical outcome. (*See* Doc. 7-12, p. 48 ("Wounds are healed nicely. Overall she has done quite well.")).

On January 8, 2016, Ms. Iheanacho reported to Dr. Howell an eight out of 10 pain level with medication. (Doc. 7-12, p. 62). Ms. Iheanacho again described "numbness in both feet." (Doc. 7-12, p. 62). Ms. Iheanacho experienced "some discolorization in her feet and ankle when flexing her ankle back." (Doc. 7-12, p. 62). Ms. Iheanacho also was "having difficulty getting comfortable" and indicated she had "to constantly be moving." (Doc. 7-12, p. 62).

Ms. Iheanacho stated that TENS unit pain treatment "helps at times and other times it aggravates the pain." (Doc. 7-12, p. 62). Although, Dr. Howell noted that Ms. Iheanacho was moving better following surgery, he acknowledged that she continued "to struggle with her back, hip, and leg pain," and he expressed no doubts as to the severity of her symptoms. (Doc. 7-12, p. 63). Dr. Howell stated that if Ms. Iheanacho was "not better in one to two weeks, [he would] have her see Dr. Adderholt in follow up to make sure [Dr. Adderholt] does not think anything else needs to be done." (Doc. 7-12, pp. 63-64). The record does not show that Ms. Iheanacho returned to Dr. Howell or Dr. Adderholt.

Ms. Iheanacho visited Dr. Ragland on February 18, 2016. (Doc. 7-12, p. 81). On this date, Ms. Iheanacho reported pain in the lower back on the left side. (Doc. 7-12, p. 81). Dr. Ragland's assessment of Ms. Iheanacho included numbness and tingling in her foot and history of back surgery. (Doc. 7-12, p. 81-82). Dr. Ragland did not prescribe any new pain medications for Ms. Iheanacho, but the record confirms that Ms. Iheanacho was still taking one Norco 10-325 MG tablet daily and Orphenadrine Citrate 100 MG tablet nightly for pain. (Doc. 7-12, p. 81).

Because many parts of these post-surgery records corroborate Ms. Iheanacho's pain and additional disabling symptoms, the ALJ should have addressed them. (Doc. 7-12, pp. 62, 70). *See Robinson v. Colvin*, No. 5:12-cv-1954-AKK, 2014 WL 2214294203, at *5 (N.D. Ala. May 28, 2014) (finding it was unreasonable for an ALJ to focus on a "snapshot" of treatment notes that show improvements and ignore notes that show a recurrence of pain); *see also* SSR 16-3p, 2016 WL 1119029, at *6 ("Important information about symptoms recorded by medical sources and reported in the medical evidence may include, but is not limited to . . . change over a period of time (e.g., whether worsening, improving, or static) . . . ."); *see Lamb v. Bowen*, 847 F.2d 698, 702 (11th Cir. 1988) ("No examining physician ever questioned the existence of appellant's pain. They simply found themselves unable to cure the pain."). Additionally, Ms. Iheanacho testified during her hearing held on March 7, 2017 (Doc. 7-3, p. 30), that her daily

pain level was an eight out of 10 even when she takes her prescribed pain medicine. (Doc. 7-3, p. 49).

Therefore, the ALJ's reliance upon post-surgery records to discredit Ms. Iheanacho's pain testimony is not supported by substantial evidence. Minor functional improvement after surgery is insufficient to discredit a claimant's pain testimony. *See Mathis v. Astrue*, No. 3:06-cv-816-J-MCR, 2008 WL 876955, at *11 (M.D. Fla. Mar. 27, 2008) ("Contrary to the ALJ's finding that Plaintiff's pain had improved significantly after her shoulder surgery in 1995, the medical evidence demonstrates that Plaintiff continued to complain of significant pain in her shoulder and neck region."); *Collins v. Astrue*, No. 2:06-cv-65-FtM-DNF, 2008 WL 477802, at *6 (M.D. Fla. Feb. 19, 2008) ("The medical records in the instant case clearly demonstrate that the Plaintiff has a medical condition [i.e., rotator cuff repair] that can cause pain and that he is credible.").

### 4. *Ms. Iheanacho's Pain Level Prior To Her Disability Onset Date*

The ALJ stated that Ms. Iheanacho's "allegedly disabling impairments was (*sic*) present at approximately the same level of severity prior to the alleged onset date. The fact that the impairments did not prevent claimant from working at that time strongly suggests that it would not currently prevent work." (Doc. 7-3, p. 20). The ALJ's point seems to be that if Ms. Iheanacho identified comparable pain

levels pre-onset date and post-surgery, then she should be able to work post-surgery because she was able to work before her onset date.

Though seemingly logical, the analysis is problematic for two reasons. First, there is no doubt that Ms. Iheanacho suffered back pain well before March 2015, her disability onset date, but the Court has not been able to locate a medical record that suggests that Ms. Iheanacho described her pain as a 7 or an 8 on a 10-point scale – Ms. Iheanacho's post-surgery pain level with medication -- before her onset date. (Doc. 7-3, p. 14). Ms. Iheanacho began experiencing back pain after she suffered a work-related injury on August 30, 2002. (Doc. 7-12, p. 62). She was able to manage her pain and continue working for more than 10 years. But the ALJ seems to have assumed that Ms. Iheanacho's back pain was a 7 or an 8 on a 10-point scale for some or all of that period of time.

The record shows that Ms. Iheanacho's back pain escalated significantly after she received an epidural for back pain in January 2015. (Doc. 7-3, p. 44). After that, Ms. Iheanacho's medical records reflect severe and increasing back pain that led her to stop working in March 2015. At the administrative hearing, Ms. Iheanacho testified that she stopped working in March 2015 because "I couldn't walk for the pain and stuff in my back and legs. And the girls [at work] had to put my legs in my car so I could go home. And I told them I wouldn't be back because I couldn't do it anymore." (Doc. 7-3, p. 40). Likewise, in her disability

application, Ms. Iheanacho wrote that she stopped working on March 10, 2015 "[b]ecause of my conditions." (Doc. 7-7, p. 6). Ms. Iheanacho testified that her pain "just kept getting worser and worser and worser ... I went from working full time to couldn't hardly walk down the hall at work ...." (Doc. 7-3, p. 44).

Thus, the ALJ's analysis seems to rest on an unsubstantiated assumption that Ms. Iheanacho had been able to manage significant back pain for an extended period of time before her onset date. Moreover, even if there were proof in the record that Ms. Iheanacho rated her pain as a 7 or an 8 on a 10-point scale both before her onset date and after her back surgery, the Court would not necessarily assume that the pain pre-onset date and post-surgery was the same or impacted Ms. Iheanacho's functional capacity in the same way without examining objective medical evidence to support what seems, on the surface, to be a logical assumption. Here, the absence of objective evidence to support the ALJ's assumption warrants remand. *See Lewis v. Barnhart*, 408 F. Supp. 2d 1223, 1227 (N.D. Ala. 2006) ("The ALJ's finding that the two radiology reports are 'essentially similar' is not based on any evidence."); *Pritchett v. Barnhart*, 288 F. Supp. 2d 1224, 1241 (N.D. Ala. 2003) ("[T]he reasons articulated for rejecting the plaintiff's allegations about symptoms . . . are not in fact supported by substantial evidence.").

### B. Daily Activities

In discrediting Ms. Iheanacho's subjective pain testimony, the ALJ also relied upon Ms. Iheanacho's daily activities. (Doc. 7-3, p. 20). "An ALJ may not rely on a claimant's daily activities alone in making a disability determination." *Hill v. Comm'r of SSA*, No. 2:14-cv-01322-SGC, 2015 WL 5559758, at *5 (N.D. Ala. Sept. 18, 2015) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997)); *see also Sparks v. Colvin*, No. 2:12-cv-02092-LSC, 2013 WL 2635263, at *5 (N.D. Ala. June 10, 2013) ("The ALJ cannot use daily activities alone to determine whether a claimant is disabled."). Therefore, procedurally, this Court cannot affirm the ALJ's decision based solely on her evaluation of Ms. Iheanacho's daily activities.

Moreover, substantial evidence does not support the ALJ's finding that Ms. Iheanacho's daily activities diminish her credibility. An ALJ may consider a claimant's daily activities when reaching a conclusion regarding credibility. *See* 20 C.F.R. §§ 404.1529(c)(3) (listing "daily activities" as a relevant factor to consider in evaluating a claimant's subjective pain testimony). In the present case, the ALJ found Ms. Iheanacho's reported daily activities were inconsistent with her alleged level of pain. (Doc. 7-3, p. 20). In particular, the ALJ cited Ms. Iheanacho's ability to "manage her personal care, do light house work, care for her

pet, prepare simple meals, do laundry, load the dishwasher, drive, ride in a car, leave home, [and] shop in stores . . . ." (Doc. 7-3, p. 20).

When examining daily activities, an ALJ must consider the record as a whole. *See Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (Appeals Council erred in finding that claimant's "daily activities . . . have not been significantly affected" when the Appeals Council "ignored other evidence that her daily activities have been significant affected."). "[P]articipation in everyday activities of short duration" will not preclude a claimant from proving disability. *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). Instead, "[i]t is the ability to engage in gainful employment that is the key, not whether a Plaintiff can perform chores or drive short distances." *Early v. Astrue*, 481 F. Supp. 2d 1233, 1239 (N.D. Ala. 2007). Moreover, an ALJ cannot discredit a plaintiff's description of limited daily activities merely because those limitations cannot be verified objectively. *See Grier v Colvin*, 117 F. Supp. 3d 1335, 1353 (N.D. Ala. 2015).

In the present case, the ALJ's review of Ms. Iheanacho's daily activities is incomplete. *See Horton v. Barnhart* 469 F. Supp. 2d 1041, 1047 (N.D. Ala. 2006). ("The ALJ's selective description of the Plaintiff's activities is disingenuous, as he accepts her listing of her activities, but not her limiting description of them."). In contrast to the ALJ's broad statement that Ms. Iheanacho performs "light housework," Ms. Iheanacho wrote in her disability application that she did laundry

only if her "back and [pelvis] will let [her]." (Doc 7-7, p. 23). Later in the application Ms. Iheanacho clarified that she only performs household chores like loading the dishwasher two times a week and that completing the task takes her "all day." (Doc 7-7, p. 42). Ms. Iheanacho testified at the administrative hearing that she does not sweep or mop because it makes her back "hurt really bad" and that she is "[i]n a lot of pain" after doing her laundry. (Doc. 7-3, pp. 20, 52); *see Williams v. Comm'r of Soc. Sec.*, No. CV406-19, 2008 WL 591288, at *5 (S.D. Ga. Mar. 3, 2008) ("If an activity is performed infrequently and only with extreme difficulty, the fact that a plaintiff can perform it is not inconsistent with allegations of fatigue, pain, or other symptoms. There is no requirement that a claimant show complete incapacitation in order to be deemed credible . . . .").

In contrast to the ALJ's broad statement that Ms. Iheanacho can "manage her personal care," Ms. Iheanacho testified at the administrative hearing that she sometimes has trouble getting ready for the day and usually requires assistance putting on her underwear and socks. (Doc. 7-3, pp. 20, 51). Similarly, Ms. Iheanacho wrote in her application that she sometimes requires help dressing, getting out of the bath, and getting on and off the toilet. (Doc 7-7, p. 41). While Ms. Iheanacho does prepare food for herself every day, she notes that her ability to cook has been affected by her disability and, on a "bad day," preparing simple meals takes her "all day." (Doc 7-7, p. 42). In her administrative hearing, Ms.

Iheanacho clarified that she doesn't cook most of the time but only fixes "a TV dinner or something [like that] . . . so [she] don't have to stand up for a long period of time." (Doc 7-3, p. 50).

Additionally, while Ms. Iheanacho purchases her own groceries, she does so only twice a month, and it usually takes her two hours because she frequently stops to rest her back. (Doc. 7-7, p. 43). Apart from trips to the grocery store, Ms. Iheanacho primarily drives to visit her aunt. (Doc. 7-3, p. 39). However, Ms. Iheanacho only drives three times a week, and she reports that she does so with difficulty because the numbness in her feet makes it difficult for her to feel the pedals. (Doc. 7-3, pp. 39, 48).

Moreover, activities such as grocery shopping and driving short distances are not sufficient to disqualify a disability finding. *See Venette v. Apfel*, 14 F. Supp. 2d 1307, 1314 (S.D. Fla. 1998) (finding that activities like housework and light grocery shopping are "minimal daily activities" and are not "dispositive evidence" of one's ability to perform certain types of work) (citing *Walker v. Heckler*, 826 F.2d 966 (11th Cir. 1987)); *see also Bennett v. Barnhart*, 288 F. Supp. 2d 1246, 1252 (N.D. Ala. 2003) ("'[S]hopping for the necessities of life is not a negation of disability . . . sporadic or transitory activity does not disprove disability.'") (quoting *Smith v. Califino*, 637 F.2d 968, 971-72 (3d Cir. 1981)). The ALJ also cited Ms. Iheanacho's ability to watch television and spend time with

family as diminishing the persuasiveness of her pain testimony, but case law indicates that an ALJ may not rest a credibility finding on these sorts of activities. (Doc 7-3, p. 20); *see Holman v. Barnhart*, 313 F. Supp. 2d 1265, 1270 (N.D. Ala. 2004) (noting that the "ability to watch television for two hours in no way indicates an ability to work . . . ."); *see Bennett v. Barnhart*, 288 F. Supp. 2d 1246, 1252 (N.D. Ala. 2003) ("'Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity . . . .'") (quoting *Smith v. Califino*, 637 F.2d 968, 971-72 (3d Cir. 1981)).

The ALJ's brief summary of Ms. Iheanacho's daily activities does not represent solely the limitations caused by Ms. Iheanacho's pain. *See Bosarge v. Berryhill*, No. CA 16-0382-C, 2017 WL 1011671, at *7 n.6 (S.D. Ala. Mar. 15, 2017) (ALJ erred in "describ[ing] Plaintiff's daily activities in a manner which would lead the reader to believe that she performed them without any limitation"). And besides, an ALJ cannot rely solely upon daily activities to discredit a claimant's pain. Therefore, the ALJ's negative credibility determination is not supported by substantial evidence.

## V.    CONCLUSION

The Court remands the Commissioner's decision for further administrative proceedings consistent with this memorandum opinion.

**DONE** this 28th day of  September, 2018.

_____

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE